## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT OWENSBORO

**CASE NO. 4:06CR19M**

**UNITED STATES OF AMERICA,**                                              **PLAINTIFF**

**V.**

**MICHAEL TUTT,**                                                                        **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on two Motions to Suppress filed by Defendant Tutt. The first motion discussed requests the suppression of evidence found in a search of 701 Cherry Street. The second requests the suppression of the pretrial identification of Tutt. A hearing on these matters was held on May 7, 2007. Post-hearing briefs have been filed, and the matters are now ripe for decision.

### I. Facts

In January, 2006, a confidential informant (CI) purchased crack cocaine outside Apartment 32, 701 Cherry Street, Henderson, Kentucky. The seller of the crack cocaine was not known to the CI. Special Agent Kirk Steward and Deputy Bill Mills viewed the controlled buy at the time of its occurrence via a video monitor in an adjacent apartment. Mills had previously had contact with man believed to reside at Apt. 32, Damien Willett, while serving a warrant at Apt. 32. Before serving that warrant, Mills had been told that Damien Willett lived there.

After having watched the controlled purchase, Mills believed the seller resembled Willett, despite the fact that a hood concealed the seller's face and the seller wore baggy clothing. The CI

placed a phone call in order to discover the identity of the seller, and was told that "King" sold the drugs. Mills contacted a jailer at the Henderson County Detention Center to inquire as to whether she knew of a black male who went by "King." The jailer indicated that Damien Willett used that nickname.

Based upon that information and the belief that Willett resided at Apt. 32, Mills provided a search warrant affidavit stating that there was probable cause to search the apartment. A search warrant was issued for and executed at 701 Cherry Street, Apt. 32, on the same day the controlled buy took place. As officers attempted to serve the warrant, an unidentified black male fled the rear of the apartment. Henderson Police Department Sergeant Keith Berry informed Agent Steward that he recognized the fleeing man as Defendant Tutt. Willett was not found in the apartment. The individuals inside the apartment identified the fleeing man as Tutt.

Seemingly on the identification of Berry and the information provided by individuals inside Apt. 32, Willett was soon disregarded as a potential suspect in the controlled purchase. About two weeks after the sale, in an attempt to identify the seller, Steward prepared a "six-pack" photographic lineup for the CI. Six photographs were shown to the CI simultaneously, and he was asked to identify the seller from the controlled buy. A photograph of Damien Willett was not included, but a photo of Tutt was. Of the other five photographs, at least one – and possibly as many as three – of the individuals were known to the CI. The CI identified Tutt as the seller of the crack cocaine.

Tutt seeks to exclude the search of Apt. 32 on the basis that the search warrant affidavit contained false and misleading information–namely the identification of the seller as Damien Willett. Tutt argues that the affidavit lacked probable cause to justify the search. As for the

photographic lineup, Tutt submits that it should be excluded because it was impermissibly suggestive and unreliable.

## II. Discussion

### A. The Search of Apartment 32

Tutt submits that the search warrant affidavit was produced in bad faith and contained false and misleading information. Tutt further argues that the search warrant executed when Apt. 32 was searched was obtained without probable cause.

#### 1. The Search Warrant Contains False and Misleading Information

Tutt contends that the underlying warrant was obtained in bad faith. To establish this, a defendant must show: (1) that the evidence presented to the magistrate contained false or misleading information; (2) that the false or misleading information was included intentionally or with reckless disregard for the truth; and (3) that the misrepresentations or omissions were material to the determination of probable cause. Franks v. Delaware, 438 U.S. 154, 155-156 (1978); United States v. Graham, 275 F.3d 490, 505 (6th Cir. 2001).

Here, all parties agree that the warrant affidavit contained false or misleading information. The affidavit stated that Damien Willett was the seller of the crack cocaine purchased by the CI, but the prosecution now submits that Willett was not the seller. It is not clear in this case, however, that the false information was included intentionally or with reckless regard for the truth. It appears there was a reasonable basis for Mills to believe that Willett sold the cocaine.

#### 2. Probable Cause

Tutt contends that probable cause did not exist for the search of Apt. 32. He submits that a "totality-of-the-circumstances approach" must be applied, and that the affidavit does not establish

a nexus between the residence and any ongoing criminal activity. See Illinois v. Gates, 462 U.S. 213, 230-31 (1983), and United States v. Laughton, 409 F.3d 744 (6th Cir. 2005).

While the Court does not find bad faith in the creation of the search warrant affidavit, even if the false portions of the affidavit were excised and the factual omissions included, probable cause remains. The affidavit established that drugs had been sold out of Apt. 32 and it was reasonable to believe that the illegal activity was afoot there. There was a significant nexus between the illegal drug sale and Apt. 32, and thus there is no basis for the suppression of the search of the residence. At the time the search warrant affidavit was prepared, Mills knew a person had sold cocaine out of Apt. 32 on that same day. When reviewing an affidavit for probable cause, the Court considers whether there was a "fair probability" that evidence of illegal activity would be found at the searched location. United States v. Davidson, 936 F.2d 856, 859 (6th Cir. 1991)(citations omitted). "A determination of probable cause simply requires consideration of whether there were reasonable grounds to believe at the time of the affidavit that the law was being violated on the premises to be searched." Mays v. City of Dayton, 134 F.3d 809, 814 (6th Cir. 1998). Here, there was a fair probability that illegal drugs were being possessed in and sold out of Apt. 32. There were reasonable grounds to believe that the law was being violated in Apt. 32, and thus probable cause existed.[1]

### B. The Photographic Identification

Due Process mandates that a defendant not be submitted to pretrial identification practices

---

[1] Even if the Court had found that the affidavit did not create probable cause, the facts of this situation indicate that a good faith exception to the warrant requirement would apply, and evidence obtained in the search would remain admissible. See United States v. Washington, 380 F.3d 236, 243 (6th Cir. 2004); United States v. Carpenter, 360 F.3d 591, 596 (6th Cir. 2004)(en banc); United States v. Van Shutters, 163 F.3d 331, 337 (6th Cir. 1988).

which are impermissibly suggestive or otherwise conducive to a mistake of identity. Manson v. Brathwaite, 432 U.S. 98, 107 (1977). Before a court will exclude evidence about a pretrial identification, a defendant must show that the identification procedure was impermissibly suggestive. Id.; United States v. Hill, 967 F.2d 226, 230 (6th Cir. 1992). Even if the identification was impermissibly suggestive, the Court considers whether the identification was otherwise reliable. Id.

The factors most often considered to determine reliability are: (1) witness's opportunity to view the defendant at the time of the crime; (2) degree of attention of the witness at the time of the crime; (3) accuracy of the witness's prior description of the criminal; (4) witness's degree of certainty when confronting the defendant; and the (5) length of time between the crime and the identification. See Ledbetter v. Edwards, 35 F.3d 1062, 1071 (6th Cir. 1994). Tutt submits that the six-pack lineup was impermissibly suggestive, or that in the alternative, it was otherwise unreliable.

Tutt suggests that the lineup was impermissibly suggestive because a newer photograph of him was available than the one used in the photographic lineup. However, the photo used was merely two years old. The age and appearance of the photograph do not cause it to stand out from the others because of its style or composition. The particular photograph of Tutt that was used did not create an impermissibly suggestive lineup.

Tutt also submits that the inclusion of individuals known to the CI in the lineup created an impermissibly suggestive lineup. The six-pack lineup contained at least one photograph of a person known to the CI and thus the CI would have immediately realized that the known individual had not been the person who sold the cocaine. At hearing, Tutt suggested that the CI may have known one or two of the other individuals, but this was unclear. Because of the known individuals, the CI was

essentially choosing the photo of the buyer from three to five unknown photographs, rather than six. Nonetheless, the Court does not find that the issue of known persons makes the lineup impermissibly suggestive. A defendant "does not have a constitutional right to be surrounded by a specific number of lineup fillers." Roldan v. Artuz, 78 F.Supp.2d 260, 272 (S.D.N.Y. 2000); see also Summitt v. Bordenkircher, 608 F.2d 247, 252-53 (6th Cir. 1979)(a three person lineup with one person of somewhat lighter complexion than the other two, where witness had described a person with a light complexion, was suggestive but did not create unreliable outcome). The CI still had to identify the suspect, and the CI clearly identified Tutt.

Following the controlled buy, the CI did not give a detailed description of the seller. The CI merely identified the person as a young, black male. The Court believes that all the photos included in the lineup match that description. Tutt submits that the skin coloration of one man was too light, but the CI had not indicated that he purchased drugs from a dark-skinned, black man. The photographs included in the lineup matched the meager description provided by the CI and therefore were not impermissibly suggestive. "[T]he question is not whether the photographic array is suggestive, but rather whether it is impermissibly suggestive." United States v. Causey, 834 F.2d 1277, 1286 (6th Cir. 1987).

Erring on the side of caution, the Court will still consider the other factors of reliability noted above. See Ledbetter v. Edwards, 35 F.3d at 1071. In this case, the CI had an extended opportunity to view the seller of the cocaine. He was able to see the seller as he exited Apt. 32, stood in front of the CI to exchange drugs and money, and as the seller returned to Apt. 32. When considering the CI's accuracy in his description, the brevity of the CI's description is notable. Although the CI's description of a young, black male was lacking in details, there is no evidence that he provided any

6

description which does not fit Tutt. Thus, the CI's earlier descriptions do not render his later identification of the alleged seller as inaccurate or unreliable. The further assessments of reliability all suggest that the CI's identification was reliable. Testimony indicated that the CI was fairly certain about his identification, and in addition, only about two weeks passed between the date of the drug sale and the identification. See Causey, 834 F.2d at 1286 ("three to four-month delay between the crime and the identification does not render the identification inherently unreliable").

Considering the identification under the totality of the circumstances, the Court finds that it was neither impermissibly suggestive nor that it was unreliable. Thus, there is no basis for exclusion.

### III. Conclusion

It is hereby ordered that Defendant Tutt's Motion to Suppress Pretrial and Trial Identification is DENIED [DN 54]; and Defendant Tutt's Motion to Suppress the Search of 701 Cherry Street is also DENIED [DN 61].

cc: counsel of record